2021 IL App (1st) 192624-U

SIXTH DIVISION
June 30, 2021

No. 1-19-2624

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| GIBRON MILLS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 OP 77252 |
| | ) | |
| BELINDA SAIN, | ) | Honorable |
| | ) | Beatriz A. Frausto-Sandoval, |
| Respondent-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Connors and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Circuit court's denial of respondent's motion to vacate a plenary stalking no contact order affirmed where respondent failed to provide a sufficient record to show that the court erred in denying her motion.

¶ 2    Respondent Belinda Sain appeals *pro se* from an order of the circuit court denying her motion to vacate a plenary stalking no contact order barring her from having any contact with petitioner, Gibron Mills, and members of his household. On appeal, Ms. Sain contends the circuit court erred when it denied her motion because Mr. Mills committed perjury. Ms. Sain also contends that the report of proceedings from the hearing where the stalking no contact order was entered is inaccurate. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Documents in the record show that on October 20, 2016, Mr. Mills obtained an emergency stalking no contact order prohibiting Ms. Sain, his neighbor, from stalking and having any contact with him, his wife, and their children. Ms. Sain was also prohibited from going within 50 feet of Mr. Mills's residence and place of employment. Following a hearing on January 10, 2017, the circuit court entered a plenary stalking no contact order barring Ms. Sain from having any contact with Mr. Mills, his family, and two Lexus vehicles. The order further stated that Ms. Sain could not call the police on Mr. Mills without permission from the circuit court unless there was an emergency. The order was in effect until January 10, 2019.

¶ 5      On August 28, 2017, Ms. Sain filed a *pro se* motion to vacate the January 10 order arguing that Mr. Mills had violated the order by stalking her. The circuit court denied the motion.

¶ 6      On November 2, 2018, Ms. Sain filed a second *pro se* motion to vacate the order entered on January 10, 2017. Ms. Sain asserted that Mr. Mills and his friends followed and stalked her when she went to work and "any time of day or night." Following a hearing, the circuit court denied Ms. Sain's motion.

¶ 7      On December 24, 2018, Mr. Mills filed a *pro se* motion to extend the plenary stalking no contact order that was going to expire on January 10, 2019. Mr. Mills stated that Ms. Sain had violated the order and he feared for his safety.

¶ 8      On January 7, 2019, the circuit court entered, by default, a plenary stalking no contact order prohibiting Ms. Sain from having any contact with Mr. Mills and his family, and from going within 50 feet of Mr. Mills's residence and place of employment. The order specified that Ms. Sain was barred from contacting any member of Mr. Mills's family through any third party and barred from making any social media posts to or about any member of Mr. Mills's family. The order was in

effect until January 7, 2021.

¶ 9    On January 10, 2019, Ms. Sain filed a *pro se* motion to vacate the January 7 default order. Ms. Sain stated that she was unaware of the court date and claimed Mr. Mills had made a false accusation against her. On February 15, 2019, the circuit court modified the January 7 plenary order by converting it to an emergency stalking no contact order effective until July 30, 2019. The court scheduled a hearing for that date.

¶ 10    At the hearing on July 30, 2019, Mr. Mills and Ms. Sain appeared *pro se*. Mr. Mills testified that Ms. Sain lived two doors down from him. Mr. Mills filed his initial petition for an order of protection because Ms. Sain called the police to arrest him every night when he returned home from work, claiming he had done "something" to her vehicle. Mr. Mills worked for the city of Chicago. Mr. Mills testified that Ms. Sain's constant attempts to have him arrested for an unknown reason could cause him to lose his job and destroy his life.

¶ 11    Mr. Mills found broken glass in front of his garage on numerous occasions. It occurred so frequently that he could no longer park inside his garage. Mr. Mills observed Ms. Sain exiting her vehicle with Seagram's Escape bottles, which were the same broken bottles he found behind his garage. On one occasion when Mr. Mills pulled into his garage, Ms. Sain approached him with a knife, claimed Mr. Mills's friends were following her, and threatened to kill him. Mr. Mills ran from Ms. Sain. The first time Mr. Mills called the police was in 2015 when Ms. Sain "keyed" his vehicle. Mr. Mills testified that Ms. Sain would not leave him alone and her conduct caused him emotional distress. Mr. Mills did not know Ms. Sain and did not understand the reason for her actions. The original order of protection entered in January 2017 stopped Ms. Sain from calling the police and from physically confronting Mr. Mills.

¶ 12    Ms. Sain testified that in December 2018, she was getting ready to attend mediation with

Mr. Mills when a man rang her doorbell and asked for "Johnny." Ms. Sain replied that Johnny did not live there. Ms. Sain suspected the man was Mr. Mills's friend and called the police. Ms. Sain testified that she did not drink, she never broke liquor bottles, and she never went to Mr. Mills's house. Ms. Sain testified that Mr. Mills's friends followed her every time she left her house. Ms. Sain gave the court several photographs she took of people she claimed were following her in various locations. Ms. Sain admitted that she never observed the people in the photographs speaking with Mr. Mills.

¶ 13    The circuit court found that there was a history of conduct that satisfied the requirements for entering a protective stalking no contact order. The court further found that the prior protective orders mitigated some of the conduct that was the basis of the orders. The court found the testimony from Mr. Mills and Ms. Sain honest and truthful. The court stated it was "convinced" by a preponderance of the evidence that if the protective order was not extended, the state of affairs would deteriorate. The court entered a plenary stalking no contact order prohibiting Ms. Sain from having any contact with Mr. Mills and his family. The order was effective for two years, until July 30, 2021.

¶ 14    On November 26, 2019, Ms. Sain filed the *pro se* motion to vacate the July 30 order that is at issue in this appeal. The record shows that the circuit court elected to view this filing as a petition for relief pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401). In her petition, Ms. Sain alleged that Mr. Mills continued to send his friends and family to follow her and that someone followed her to the courthouse the prior week. She claimed Mr. Mills committed perjury and made a false accusation against her. In what appears to be a reference to a criminal case, Ms. Sain stated that the state's attorney had a statement from Timothy Moore, and that someone had posed as Mr. Moore in court.

¶ 15    On December 9, 2019, the circuit court entered an order indicating only Ms. Sain had appeared in court that day. Ms. Sain was ordered to provide proper notice to Mr. Mills "by regular & certified mail." The motion to vacate was continued to December 23, 2019.

¶ 16    On December 23, 2019, the circuit court denied Ms. Sain's motion to vacate and removed the case from the court's call. The court's written order, on a preprinted form, indicates that both Ms. Sain and Mr. Mills were present in court, and that the court had been "fully advised" in the matter. The record does not include a transcript or alternative report of proceedings for this date.

¶ 17                                    II. JURISDICTION

¶ 18    On December 27, 2019, Ms. Sain timely filed a *pro se* notice of appeal indicating she was appealing the December 23 order. We have jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 304(b)(3) (eff. March 8, 2016), governing appeals from final judgments entered by the circuit court on section 2-1401 petitions.

¶ 19                                    III. ANALYSIS

¶ 20    On appeal, Ms. Sain contends that her motion to vacate the plenary stalking no contact order should have been granted because Mr. Mills committed perjury. Ms. Sain also contends that the report of proceedings from the hearing on July 30, 2019, where the stalking no contact order was entered, is inaccurate because she was misquoted and there are several omissions from the transcript. Ms. Sain claims that Mr. Mills filed a false police report against her to extend the plenary stalking no contact order. Ms. Sain also states that the circuit court ignored everything she said and accepted everything Mr. Mills said.

¶ 21    Mr. Mills has not filed a responsive appellee's brief. This court, however, has elected to consider this appeal under the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131-33 (1976).

¶ 22    Initially, we observe that Ms. Sain's *pro se* brief fails to comply with the requirements in Supreme Court Rule 341(h) (eff. May 25, 2018) and Rule 342 (eff. Oct. 1, 2019). Ms. Sain used the form brief approved by the Illinois Supreme Court. However, her brief fails to present the facts and procedural history necessary for our understanding of the case, fails to articulate a cohesive legal argument, and is completely devoid of any citation to legal authority or to the record. Ms. Sain's *pro se* status does not relieve her of her duty to comply with our supreme court's rules regarding the contents of her brief. *Ellis v. Flannery*, 2021 IL App (1st) 201096, ¶ 8. Based on Ms. Sain's noncompliance with these rules, we could dismiss her appeal. *Id.*

¶ 23    In addition, Ms. Sain attached to her brief several documents that are not included in the record on appeal. These include an arrest report, a police motorist report, a court docket sheet from another case, and a photograph. We are precluded from considering the information contained in these documents as they are not properly before this court and cannot be used to supplement the record. *Revolution Portfolio, LLC v. Beale*, 341 Ill. App. 3d 1021, 1024 (2003).

¶ 24    Our review of this appeal is hampered by an incomplete record. An appellant has the burden of presenting a sufficiently complete record of the circuit court proceedings to support any claims of error, and absent such a record, this court will presume the circuit court's order conformed with the law and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Any doubts arising from an incomplete record will be resolved against the appellant. *Id.*

¶ 25    Pursuant to Supreme Court Rule 323 (eff. July 1, 2017), in lieu of a circuit court transcript, an appellant may file a bystander's report (Rule 323(c)) or an agreed statement of facts (Rule 323(d)). Here, the record does not contain a report of the circuit court proceedings in any format for the December 23, 2019, hearing when the court denied Ms. Sain's motion to vacate.

¶ 26    Without a report of proceedings, this court has no knowledge of what arguments the parties

made before the circuit court or what evidence, if any, was presented. We do not know the factual findings the court made or the reasoning and rationale that provided the basis for the circuit court's ruling. Under these circumstances, this court must presume that the circuit court acted in conformity with the law and ruled properly after considering the evidence before it. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156-57 (2005); *Foutch*, 99 Ill. 2d at 391-92.

¶ 27                                      IV. CONCLUSION

¶ 28     For these reasons, we affirm the judgment of the circuit court.

¶ 29     Affirmed.